**SIGNED this 4th day of September, 2012**

_____
Shelley D. Rucker
**UNITED STATES BANKRUPTCY JUDGE**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF TENNESSEE
SOUTHERN DIVISION

In re:

MILTON JOSEPH FOX                                    No. 12-11544
PAMELA LYNN FOX,                                     Chapter 13

    Debtors.

## MEMORANDUM

The court has before it the objection of USAA Federal Savings Bank (the "Bank") to the debtors' chapter 13 plan. The plan proposes to treat the Bank's claim as unsecured although the debtors granted a security interest to the Bank in their residence. The debtors contend that the Bank's claim is wholly unsecured because the value of the residence does not exceed the amount of the first lien and the real estate taxes. At an evidentiary hearing held on August 23, 2012, both sides presented expert testimony as to value. Based on the evidence presented the court finds that the residence does have value in excess of the first lien and the real estate taxes. Consequently, the Bank's objection is sustained.

In support of its ruling the court makes the following findings of fact and conclusions of law. This court has jurisdiction to hear and determine this contested matter under 28 U.S.C.A. § 1334 and § 157(b)(2)(L).

The debtors own a home located at 6111 Veronica Drive, Ooltewah, Tennessee. USAA Federal Savings Bank holds a second in priority deed of trust on the residence to secure a claim of $30,145.81. GMAC Mortgage, LLC, holds a first in priority deed of trust on the residence to secure an obligation of $123,066.02 and an arrearage of $1,219.99. The deed of trust for the first lien secures only one obligation. County taxes have accrued on the property in the amount of $1,132.36.

The debtors filed for relief under Chapter 13 on March 26, 2012. They have proposed a plan which treats the Bank as an unsecured creditor. The debtors contend their residence is not worth more than the sum of the principal balance of the first mortgage, the first mortgage arrearage, and the real estate taxes. Therefore, they have proposed unsecured treatment for the Bank's second lien.

In support of their position, they rely on the applicable law in the Sixth Circuit set forth in the case of *Lane v. Western Interstate Bancorp (In re Lane),* 280 F.3d 663 (6th Cir. 2002). *Lane* states, "[w]here a creditor holds a second mortgage on a homestead valued at less than the debtor's secured obligation to a first mortgagee, . . . the holder of the second mortgage has only an 'unsecured claim' for § 506(a) purposes." *Id.* at 664. If the lien has no value, the claimant holds an unsecured claim and the claimant's contractual rights are subject to modification under § 1322(b)(2) of the Bankruptcy Code. *Id.* at 669. The Bank does not dispute that this is the applicable law; but it does dispute that the house is no longer worth more than the sum of the outstanding balance of the first mortgage and the real estate taxes.

At the hearing on the Bank's objection to the debtors' plan, an appraiser for each party gave an expert opinion as to the value of the property. Their values were $116,000 for the debtors and $154,000 for the Bank. Both considered the house to be adequately maintained

2

and of average quality. The appraisals were issued within three months of each other. Both appraisers thought that any analysis other than a sales approach was irrelevant. Nevertheless, the values were $38,000 apart. The difference is attributable to the comparable sales each appraiser chose.

Both appraisers acknowledged that the best comparables would be sales within the past six months of homes of similar size, age, condition, and quality located within a mile of the subject property. However, both appraisers acknowledged problems with finding comparable sales. Mr. Joseph Ramirez, the debtors' appraiser, stated in his appraisal that "[c]omps in this market are less than ideal for this subject." Exhibit 1 at 3. He offered five sales within the prior six months, two of which were foreclosure sales. His unadjusted comparable sales ranged from $92,000 to $126,500. Three of the sales were of homes that lacked basements. There was one sale that was tied for closest in age to the debtors' residence, had an unfinished basement as does the debtors' residence and was located within two-tenths of a mile of the debtors' residence. It was also the highest comparable sale at $126,500 with the least percentage of adjustment.

The Bank's appraiser, Mr. John Cline, also acknowledged a problem with comparable sales. "Due to the decline in the number of homes sold in Hamilton County in the past several years, very few sales were available. The best available sales were used in this report." Exhibit A at 2. His unadjusted comparable sales ranged from $153,000 to $162,000. One of the sales selected was of a house on the same street as the debtors'. From a review of the comparable sales, the court finds that Mr. Cline's selections appear to be closer to the debtors' residence than those selected by Mr. Ramirez. Mr. Ramirez even speculated at the hearing that Mr. Cline may have had the benefit of additional sales data since Mr. Cline's appraisal was prepared three months after Mr. Ramirez's appraisal.

As further support for the court's findings, the debtors purchased the home in 2003 for $149,000. Almost ten years later, Mr. Cline's appraisal only increased that value by

3

$6,000.00. The debtors' attorney asked the court to take notice of the housing crisis that has occurred in this country. In rebuttal to Mr. Cline's testimony that values had remained stable in Hamilton County, Mr. Ramirez also testified that values had declined. However, his rebuttal testimony did not include a starting date for the decline. Had the home been purchased in 2007 or 2008 rather than 2003, the court would have assigned more weight to the debtors' argument and Mr. Ramirez's testimony that there had been a drop in home values in this area. Because there was no proof as to what period of time was covered by that drop in the value of the home when the decline began, the court did not find this a sufficient basis to disregard Mr. Cline's opinion.

The debtors' attorney also focused on the existence of power lines and a sloping lot as further reasons that the residence was not as valuable as other homes sold in the area. The court finds that comparable sales of homes in the same neighborhood with the same proximity to power lines and located on sloping lots were still substantially above the $116,000 value to which Mr. Ramirez opined.

Based upon the foregoing, the court finds that the value of the home is $154,000. Therefore, there is value in excess of the sum of the principal balance of the first mortgage, the first mortgage arrearage, and the taxes, which totals $125,418.37. The debtors may not treat the Bank's claim as unsecured. The Bank's objection will be sustained. The debtors will have ten days to amend their plan in compliance with the court's order or convert the case. A separate order will enter.

# # #